1   **WO**

2

3

4

5

6

7                   IN THE UNITED STATES DISTRICT COURT

8                     FOR THE DISTRICT OF ARIZONA

9

10

11

12  Ernestina Martinez,              )  No. 06-1915-PHX-RCB
                                     )
13              Plaintiff,           )      **O R D E R**
                                     )
14  vs.                              )
                                     )
15                                   )
    Michael J. Astrue, Commissioner )
16  of Social Security,              )
                                     )
17              Defendant.           )
                                     )
18  _____  )

19        Currently pending before the court is a motion for summary

20  judgment pursuant to Fed. R. Civ. P. 56 by plaintiff, Ernestina

21  Martinez (doc. 10); and a cross-motion for summary judgment by

22  defendant, Michael J. Astrue,[1] Commissioner of Social Security

23

24  _____
          [1]      Originally JoAnne B. Barnhart was the named defendant in this action,
25  as she was the Commissioner when this action was commenced.  On February 12,
    2007, Michael J. Astrue became Commissioner.  Therefore in accordance with Fed.
26  R. Civ. P. 25(d)(1) which allows, among other things, for substitution when a
    "public officer is a party to an action in his official capacity and during its
    pendency . . .  ceases to hold office," the court hereby substitutes Mr. Astrue
27  for Ms. Barnhart as the party defendant in this action.  As expressly provided
    for under section 405(g) of the Social Security Act, this action "survive[s]
28  notwithstanding" this change in Commissioners.  42 U.S.C. § 405(g) (West Supp.
    2007).

1   ("the Commissioner") (doc.  16).  For the reasons set forth

2   below, the court grants plaintiff's motion for summary judgment,

3   denies defendant's cross-motion for summary judgment and remands

4   this matter for further administrative action pursuant to 42

5   U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) (sentence 4).

6                          ***Background***

7       Plaintiff applied for Disability Insurance Benefits ("DIB)

8   on October 14, 1999, stating that she had "bec[o]me unable to

9   work because of her disabling condition on November 1, 1995."

10  Tr. at 75.  On February 23, 2000, plaintiff's 1999 application

11  for DIB was  denied.  Id. at 61.  She did not appeal that denial.

12  Id. at 19.

13      Plaintiff reapplied for DIB on June 7, 2004, reciting again

14  that she had "bec[o]me unable to work because of her disabling

15  condition on November 1, 1995."  Id. at 66.   On November 19,

16  2004, that application was denied, as was her subsequent request

17  for reconsideration.  Id. at 39-42; and at 48-50.  She therefore

18  timely filed a request for an administrative hearing, which was

19  held on November 4, 2005.  Id. at 19.

20      Stating that he had "careful[ly] consider[ed] the entire

21  record," the Administrative Law Judge ("ALJ") expressly found

22  that plaintiff was "not disabled at Step Two of the sequential

23  evaluation process as set forth at 20 CFR 404.1520."  Id.

24  Although he found that the plaintiff had rheumatoid arthritis and

25  diabetes, the ALJ further found that her "allegations of

26  disability were not credible in light of the evidence."  Id. at

27  21.  In that regard, the ALJ also found that plaintiff "did not

28  have any impairment that would have imposed more than minimal

- 2 -

1 | limitations upon her ability to perform basic work-related

2 | activities prior to her date last insured."  Id.

3 | Thereafter plaintiff requested review by the Social Security

4 | Administration Appeals Council, and she submitted additional

5 | evidence.  Id. at 14, 35A-J; and 375-80.  The ALJ's decision

6 | became the final decision of the Commissioner when, on July 11,

7 | 2006, the Council denied plaintiff's request for review.  Id. at

8 | 7.  As 42 U.S.C. 405(g) allows, plaintiff then commenced the

9 | present action seeking judicial review of the ALJ's decision.

10 | ***Discussion***

11 | ***I. Standards of Review***

12 | ***A.   Summary Judgment Standard***

13 | Pursuant to Fed. R. Civ. P. 56(c), a party is entitled to

14 | summary judgment "if the pleadings, depositions, answers to

15 | interrogatories, and admissions on file, together with the

16 | affidavits, if any, show that there is no genuine issue as to any

17 | material fact and that the moving party is entitled to a judgment

18 | as a matter of law."  It is beyond dispute that "[t]he moving

19 | party bears the initial burden to demonstrate the absence of any

20 | genuine issue of material fact."  Horphag Research Ltd. v.

21 | Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted).

22 | "The criteria of 'genuineness' and 'materiality' are distinct

23 | requirements."  Nidds v. Schindler Elevator Corp., 113 F.3d 912,

24 | 916 (9th Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477

25 | U.S. 242, 248 (1986)).  "The requirement that an issue be

26 | 'genuine' relates to the quantum of evidence the plaintiff must

27 | produce to defeat the defendant's motion for summary judgment."

28 | Id. "There must be sufficient evidence 'that a reasonable jury

1 could return a verdict for the nonmoving party.'" Id. (quoting

2 Anderson, 477 U.S. at 248).  "As to materiality, the substantive

3 law will identify which facts are material."  Anderson, 477 U.S.

4 at 248.

5       "Once the moving party meets its initial burden, . . . , the

6 burden shifts to the nonmoving party to set forth, by affidavit

7 or as otherwise provided in Rule 56, specific facts showing that

8 there is a genuine issue for trial."  Id. (internal quotation

9 marks and citations omitted). This "[e]vidence must be concrete

10 and cannot rely on 'mere speculation, conjecture, or fantasy.'"

11 Bates v. Clark County, 2006 WL 3308214, at * 2 (D.Nev. Nov. 13,

12 2006) (quoting O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d

13 1464, 1467 (9th  Cir. 1986)). Similarly, "a mere 'scintilla' of

14 evidence" is not  sufficient "to defeat a properly supported

15 motion for summary judgment; instead, the nonmoving party must

16 introduce some 'significant probative evidence tending to support

17 the complaint.'"  Fazio v. City & County of San Francisco, 125

18 F.3d 1328, 1331 (9th  Cir. 1997) (quoting Anderson, 477 U.S. at

19 249, 252). Thus, in opposing a summary judgment motion it is not

20 enough to "simply show that there is some metaphysical doubt as

21 to the material facts."  Matsushita, 475 U.S. at 586 (citations

22 omitted).

23       By the same token though, when assessing the record to

24 determine whether there is a "genuine issue for trial," the court

25 must "view the evidence in the light most favorable to the

26 nonmoving party, drawing all reasonable inferences in his favor."

27 Horphag, 475 F.3d at 1035 (citation omitted).  "This is true even

28 though[,]" as here, "the court is presented with cross-motions

-4-

1 for summary judgment[.]" High Tech Gays v. Defense Ind. Sec.

2 Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990) (citation

3 omitted).

4    On a summary judgment motion, the court may not make

5 credibility determinations; nor may it weigh conflicting

6 evidence. See Anderson, 477 U.S. at 255.   Thus, as framed by the

7 Supreme Court, the ultimate question on a summary judgment motion

8 is whether the evidence "presents a sufficient disagreement to

9 require submission to a jury or whether it is so one-sided that

10 one party must prevail as a matter of law."   Id. at 251-52.   The

11 fact that, as here, both parties are moving for summary judgment

12 does not alter these standards.   "It is well settled that a

13 court's duty to ascertain whether facts remain in contention is

14 not obviated by cross-motions for summary judgment."   Eby v. REB

15 Realty, Inc., 495 F.2d 646, 649 n.4 (9th Cir. 1974) (citations

16 omitted).

17    **_B.   Social Security Act_**

18    The Commissioner's denial of benefits is subject to judicial

19 review pursuant to 42 U.S.C. § 405(g).   The decision of the

20 Commissioner must be affirmed if it is supported by substantial

21 evidence and the Commissioner applied the correct legal

22 standards.   Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

23 Cir. 2005); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir.

24 2003); Tackett, 180 F.3d at 1097; Reddick v. Chater, 157 F.3d

25 715, 720 (9th Cir. 1998).   Factual determinations by the

26 Commissioner, acting through an ALJ, must be affirmed if

27 supported by substantial evidence.   See Celaya v. Halter, 332

28

1  F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520,

2  521 (9th Cir. 1996).

3        Substantial evidence is "such relevant evidence as a

4  reasonable mind might accept as adequate to support a

5  conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

6  It is more than a "mere scintilla," but less than a

7  preponderance. Richardson, 402 U.S. at 401 (1971) (internal

8  quotations omitted); Connett v. Barnhart, 340 F.3d 871, 873 (9th

9  Cir. 2003); Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 720;

10  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

11        In reviewing the Commissioner's decision, the district

12  court must "consider the evidence as a whole, weighing both the

13  evidence that supports and the evidence that detracts from the

14  Commissioner's conclusion." Smolen v. Chater, 80 F.3d 1273, 1279

15  (9th Cir. 1996). If the evidence can reasonably support either

16  affirming or reversing the Commissioner's conclusion, the

17  district court may not substitute its judgment for that of the

18  Commissioner and must affirm. See McCartey v. Massanari, 298

19  F.3d 1072, 1075 (9th Cir. 2002); Tackett, 180 F.3d at 1098;

20  Reddick, 157 F.3d at 720; Andrews v. Shalala, 53 F.3d 1035,

21  1039-40 (9th Cir. 1995).

22        Finally, "[a] decision of the ALJ will not be reversed for

23  errors that are harmless." Stout v. Comm'r, SSA, 454 F.3d 1050,

24  1054 (9th Cir. 2006) (citation omitted); accord Burch v.

25  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Curry v. Sullivan,

26  925 F.2d 1127, 1131 (9th Cir. 1991). Thus, errors that are

27  inconsequential to the ALJ's ultimate determination as to

28  disability are not reversible. Stout, 454 F.3d at 1055.

-6-

1        As relief on her summary judgment motion, the plaintiff is
2 seeking to have this court "enter judgment reversing the
3 Commissioner's final decision without a remand for rehearing,
4 i.e. for a finding of disability and an award of benefits."  Pl.
5 Mot. (doc. 10) at 1 (citing 42 U.S.C. § 405(g)(sentence four)).
6 Alternatively, she is seeking to have this court reverse "the
7 Commissioner's final decision, with a remand for a rehearing[.]"
8 Id.  Defendant, on the other hand, asserts that he is entitled to
9 summary judgment because  his "final decision . . . is supported
10 by substantial evidence, making it conclusive upon this court."
11 Def. Mot. (doc. 16) at 2.

12 ***II.   Disability Determination***

13        To be entitled to disability benefits, a plaintiff must
14 establish that her disability existed on or before the expiration
15 date of her insured status.  See Tidwell v. Apfel, 161 F.3d 599,
16 601 (9th Cir. 1998) (citation omitted).  Here, the ALJ determined
17 that that expiration date is September 30, 2000; and the parties
18 do not dispute this.  See Tr. at 21.  "To medically qualify for
19 benefits under the Social Security Act, a claimant must establish
20 'the inability to engage in any substantial gainful activity by
21 reason of any medically determinable physical or mental
22 impairment . . . which has lasted or can be expected to last for
23 a continuous period of not less than 12 months."  Stout v.
24 Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)
25 (quoting 42 U.S.C. § 423(d)(1)(A)).  There is a five step
26 sequential evaluation process which the Commissioner, through an
27 ALJ, must employ for determining whether a claimant is disabled.
28 See id. (citing 20 C.F.R. §§ 404.1520, 416.920).

-7-

1      Here, plaintiff is challenging the ALJ's determinations at

2   step two.  She is arguing that there was not substantial

3   evidence, in the language of the applicable regulation, to

4   support the ALJ's finding that she did not have an "impairment

5   sufficiently severe to limit . . . her ability to work[.]"  20

6   C.F.R. § 404.1520.  Plaintiff further contends that the ALJ

7   committed harmful error by (1) not "evaluating" the

8   "retrospective opinions" of one of her treating physicians, Dr.

9   Fosdick; (2) "erroneously evaluating" the opinions of another of

10  her treating physicians, Dr. Zara; (3) improperly rejecting the

11  testimony of lay witnesses; (4) improperly relying upon the

12  observations of a Social Security Field Office employee; and (5)

13  by failing to properly evaluate her credibility.  The court will

14  address these contentions seriatim.

15      ***A.   Treating Physician's Medical Opinions***

16          ***1.  Dr. Fosdick***

17      Since at least June 2001, Dr. Fosdick has been one of

18  plaintiff's treating physicians.  Tr. at 351.  At that time he

19  ordered laboratory testing for the rheumatoid factor.  Id. at 247

20  and 250.  On April 4, 2005, he completed a "Medical Work

21  Tolerance Recommendations" form outlining plaintiff's functional

22  restrictions.  On that form Dr. Fosdick indicated that she could

23  not perform sedentary work, either full-time or part-time.  Id.

24  at 278.  He further indicated that plaintiff had specific

25  limitations in terms of her abilities to sit, stand, walk, bend

26  and use her hands and arms.  Id. at 278-79.  She could stand for

27  no more than 15 minutes at a time, for a total of one hour per

28  workday.  Id. at 278.  During the workday, she could walk for no

1 more than ten minutes "at one time without resting," and for "no
2 more than" one hour total.  <u>Id.</u>   Plaintiff also could not bend,
3 according to Dr. Fosdick's evaluation form, and she was only
4 occasionally able to perform fine movements with her hands.  <u>Id.</u>
5 at 279.  Significantly, Dr. Fosdick found that the "effective
6 dates" of those limitations were from December 10, 1999 "to
7 future."  <u>Id.</u>

8      There is no mention whatsoever of Dr. Fosdick's opinions in
9 the ALJ's decision.  Plaintiff asserts that this omission
10 "violat[es] . . . Ninth Circuit law and the regulations[;]" thus
11 the ALJ erred because he "neither acknowledged nor evaluated" Dr.
12 Fosdick's  April 2005 "retrospective opinions[.]"  Pl. Mem. (doc.
13 10-3) at 4 (citations omitted).  The Commissioner responds that
14 because Dr. Fosdick's opinions were "admittedly retrospective[,]"
15 they were "not probative of Plaintiff's condition prior to her
16 DLI [date of last insured]."  Def. Mem. (doc. 18) at 3 (citation
17 omitted).  Even if probative, the Commissioner further responds
18 that "at most" Dr. Fosdick's opinion would have "create[d] a
19 conflict in the evidence which" the ALJ could "properly resolve."
20 <u>Id.</u> at 4. As a fallback position, the Commissioner resorts to the
21 well-settled general proposition that "[i]f evidence exists to
22 support more than one rational interpretation, [the court] must
23 defer to the Commissioner's decision."  <u>Widmark v. Barnhart</u>, 454
24 F.3d 1063, 1070 (9th Cir. 2006) (O'Scannlain, J., dissenting)
25 (internal quotation marks and citation omitted).  The
26 Commissioner did not expand upon this argument, but presumably it
27 is his position that such evidence does exist to support the
28 ALJ's decision.

1        The Commissioner's argument that the ALJ, with no comment,

2  was free to disregard Dr. Fosdick's retrospective opinions

3  because they were "not probative" is flawed for several reasons.

4  First, "medical reports are inevitably rendered retrospectively

5  and should not be disregarded solely on that basis."  Smith v.

6  Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); see also Morgan v.

7  Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999)

8  ("[T]he circumstance of a retroactive diagnosis, standing alone,

9  may not be sufficient to discount the opinion of a treating

10  physician.") This is in accordance with the Commissioner's own

11  policy that "[i]n some cases, it may be possible, based on the

12  medical evidence to reasonably infer that the onset of a

13  disabling impairment(s) occurred some time prior to the date of

14  the first recorded medical examination, e.g., the date the

15  claimant stopped working."  SSR 83-20.

16        What is more, the Commissioner's suggestion that the ALJ

17  properly disregarded that opinion because it was not probative is

18  exactly the sort of *post hoc* rationalization which the Ninth

19  Circuit counsels against.  See Stout, 454 F.3d at 1054 (internal

20  quotation marks and citations omitted)  (reviewing court is

21  "constrained to review the reasons the ALJ asserts[,]" and may

22  not affirm an agency's decision "on a ground that the agency did

23  not invoke in making its decision[]").  The ALJ did not state

24  that he was not considering Dr. Fosdick's opinion because it was

25  not probative in that it was retrospective.  As noted above, the

26  ALJ did not mention Dr. Fosdick's opinions at all in his

27  decision.  Thus, it is not within the province of this reviewing

28  court to (1) speculate as to why the ALJ did not consider this

- 10 -

1  evidence; and (2) affirm on the unarticulated basis that Dr.

2  Fosdick's opinion was not probative.

3      The ALJ's failure to mention Dr. Fosdick is even more

4  troubling because he was one of plaintiff's treating physicians.

5  "By rule, the Social Security Administration favors the opinion

6  of a treating physician over non-treating physicians." Orn v.

7  Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R.

8  § 404.1527).  Among other places, this preference is found in 20

9  C.F.R. 404.1527(d)(2), which provides in relevant part that if a

10 treating physician's opinion is "well-supported by medically

11 acceptable clinical and laboratory diagnostic  techniques and is

12 not inconsistent with the other substantial evidence  in [the]

13 case record, [it will be given] controlling weight."  Deference

14 to the opinions of treating physicians explains the Ninth

15 Circuit's well settled views as to how such opinions should

16 impact an ALJ's findings:

17              Where the treating doctor's opinion is not
               contradicted by another doctor, it may be
18             rejected only for clear and convincing reasons
               supported by substantial evidence in the record.
19             . . .  Even if the treating doctor's
               opinion is contradicted by another doctor, the
20             ALJ may not reject this opinion without providing
               specific and legitimate reasons supported
21             by substantial evidence in the record.  This can
               be done by setting out a detailed and thorough
22             summary of the facts and conflicting clinical
               evidence, stating his interpretation thereof
23             and making findings. . . .  The ALJ must do more
               than offer his conclusions.  He must set forth
24             his own interpretations and explain why they,
               rather than the doctors', are correct.

25

26 Id. (internal quotation marks and citations omitted).

27      In the present case, plaintiff provided the medical records

28 from several treating physicians, including approximately 75

- 11 -

1  pages of records from Dr. Fosdick.  As a licensed physician, Dr.

2  Fosdick is an "acceptable medical source" who can provide medical

3  opinion evidence.  See 20 C.F.R. §§ 404.1513(a)(1),

4  404.1527(a)(2).  Based upon the case law set forth above and the

5  governing regulations, the court agrees with plaintiff that the

6  ALJ's failure to even mention Dr. Fosdick's opinions was error.

7  As a licensed treating physician,  Dr. Fosdick was "an acceptable

8  medical source" whose opinions should have been discussed by the

9  ALJ – and perhaps have been accorded controlling weight.  Yet,

10  the ALJ disregarded Dr. Fosdick's opinions without comment.

11  Silently disregarding testimony as to how an impairment limits a

12  claimant's ability to work has never been held harmless error.

13  See Stout, 454 F.3d at 1055-56.  Thus, it is difficult to

14  countenance a similar excuse for the error of silently

15  disregarding a treating physician's opinion.

16      The court notes that the ALJ's failure to consider the

17  medical opinion of Dr. Fosdick is compounded by the fact that he

18  at least mentioned, and then discredited, the retrospective

19  opinion of another treating physician, Dr. Palmer.  See Tr. at

20  20.  The ALJ decided to give "no weight" to Dr. Palmer's

21  assessment because that doctor did not see plaintiff until "more

22  than four years after her date last insured."  Id.  Because the

23  ALJ did not even mention Dr. Fosdick's opinions though, this

24  reviewing court has no way of knowing if the ALJ's reasoning was

25  similar with respect to Dr. Fosdick.  And, as already stated, it

26  would be impermissible for the court to speculate in this regard.

27      ***2. Dr. Zara***

28      Plaintiff is also challenging the ALJ's decision in terms of

- 12 -

1 the medical opinion of another of her treating physicians, Dr.

2 Zara. Plaintiff contends that the ALJ "erroneously evaluated

3 . . . physician Dr. Zara's August and December 1999 opinions[]"

4 in two ways.  Pl. Mem. (doc. 10-3) at 8.  First, the ALJ did not

5 "mention that in December 1999" Dr. Zara confirmed his September

6 1999 opinions[]" that she had rheumatoid arthritis and was

7 "totally disabled."  Id. (citing Tr. at 299).  This omission is

8 significant from plaintiff's standpoint because the ALJ rejected

9 Dr. Zara's September 23, 1999, conclusion that plaintiff was

10 "totally disabled" based upon the ALJ's determination that the

11 doctor had known plaintiff "for less than a month" when he

12 rendered that opinion. See  Tr. at 20.  Dr. Zara treated

13 plaintiff several months later in December, 1999 and reached the

14 same conclusion; yet plaintiff contends the ALJ "did not grapple

15 with th[is] key fact."  Pl. Reply (doc. 19) at 6.

16 Plaintiff also disputes the ALJ's analysis of Dr. Zara's

17 opinions, contending that "the ALJ erroneously rejected Dr.

18 Zara's opinions as unsupported by objective medical evidence."

19 Pl. Mem. (doc. 10-3) at 9.  In this regard, plaintiff notes that

20 Dr. Zara's  physical examination where plaintiff "exhibited

21 decreased ranges of motion of both shoulders" was sufficient

22 "objective medical evidence[,]" notwithstanding the ALJ's

23 contrary conclusion. See id.

24     Quoting the ALJ's entire discussion of Dr. Zara's medical

25 opinions, the Commissioner counters that the ALJ "gave specific

26 and legitimate reasons for rejecting" Dr. Zara's opinions.  Def.

27 Mem. (doc. 18) at 4.  Although unstated, evidently it is the

28

1  Commissioner's view that any errors with respect to the ALJ's

2  consideration of Dr. Zara's opinions were harmless.

3      The court disagrees.  Rejecting Dr. Zara's opinion that

4  plaintiff was totally disabled as of the date last insured is not

5  inconsequential, as that finding contributed significantly to the

6  ALJ's ultimate finding of no disability.  Further, because there

7  is "objective medical evidence" within the meaning of 20 C.F.R.

8  § 404.1529(c)(2)[2] in Dr. Zara's records that plaintiff had reduced

9  joint motion, the ALJ improperly rejected his opinions as not

10 being based upon objective medical evidence.  In his notes from

11 plaintiff's October 26, 1999, office visit, Dr. Zara wrote,

12 "{m]ultiple joint tenderness with passive range of motion,

13 especially the shoulders, elbows, wrists, knees, hips and ankle

14 joints[.]" Tr. at 152.  That same notation is found in his

15 earlier notes from September 2, 1999.  See id. at 301.  And, on

16 September 23, 1999, Dr. Zara noted that plaintiff had

17 "[d]ecreased range of motion of the right shoulder, as well as

18 the small joints of both hands."  Id. at 300.   On remand the ALJ

19 shall properly evaluate Dr. Zara's opinion taking into account,

20 among other things, the relevant objective medical evidence.

21     ***B.  Lay Witnesses***

22     As the ALJ noted, plaintiff's "daughter, husband and church

23 friends submitted statement[s] attesting that [her] condition had

24 deteriorated over the past 10 years."  Tr. at 21.  He then

25 conclusively stated, "These statements are given the weight

26 _____

27      [2]      That regulation defines "objective medical evidence" as, *inter alia*,
   "evidence obtained from the application of medically acceptable clinical and
   laboratory diagnostic techniques, such as evidence of reduced joint motion[.]"
28 20 C.F.R. § 404.1529(c)(2)(2006).

1 accorded to the statements of laypersons." Id.  Finding those

2 statements were "not specific to the period under

3 consideration[,]" the ALJ gave them "little weight[.]"  Id.

4      Plaintiff maintains that "substantial evidence" does not

5 support that finding because the ALJ did not, as the Ninth

6 Circuit requires, "provide reasons germane" to that testimony

7 before rejecting it.  Pl. Memo. (doc. 10-3) at 10 (citation

8 omitted).  Instead, the ALJ gave one reason for discrediting the

9 statements of all of the lay witnesses.  As just noted, he

10 disregarded those statements based upon the time frame.

11      Plaintiff concedes that that was a valid reason for

12 discrediting "some of the statements," but not for the statement

13 by plaintiff's husband, Victor Martinez, Sr.  Id.  Mr. Martinez,

14 in a letter apparently from December 2004, explained that "over

15 the past 10 years the disease has restricted [plaintiff] and [he]

16 watched [her] struggle to perform activities that most people

17 take for granted."  Tr. at 134.   After explaining the scope of

18 those restrictions, Mr. Martinez opined that "[t]here is no

19 possible way that [plaintiff] could have held any employment over

20 the last 10 to 15 years of her life."  Id.  Plaintiff contends

21 that "[b]ecause [this] statement corroborated [plaintiff's]

22 statements with respect to her claim of disability, at her date

23 of last insured, the ALJ's error was harmful."  Pl. Mem. (Doc.

24 10-3) at 10 (citing, *inter alia*, SSR 83-20 ("lay-witness

25 statements may be relevant to the determination of the onset of a

26 claimant's disability")).

27      The Commissioner counters that the ALJ properly found the

28 lay witnesses' statements were "not probative."  Def. Mem. (doc.

- 15 -

1  18) at 5.   As to the statement of plaintiff's husband in

2  particular, the Commissioner maintains that it "simply paralleled

3  or was cumulative; of what Plaintiff stated, and [she] was

4  properly found not credible."[3] <u>Id.</u> at 6.   As with the other

5  alleged errors, the Commissioner repeats that the ALJ's

6  determination as to the lay witnesses' statements was at most

7  harmless error because "it was inconsequential to the ultimate

8  nondisability determination."  <u>Id.</u> (citation omitted).

9       Plaintiff limits her Reply to her husband's statements.   She

10 asserts that any error as to this statement was not harmless

11 because the ALJ discredited her husband's statement because it

12 was "retrospective to her date of last insured[,]" when it was

13 not.   Pl. Reply (doc. 19) at 6 (citing Tr. at 21 and 134).

14 Plaintiff also urges the court to reject outright the

15 Commissioner's "argument that corroborating evidence is not

16 probative because it is corroborative."  <u>Id.</u> at 7.

17      At this juncture, it appears to the court that plaintiff's

18 only disagreement with the ALJ in terms of the lay witness

19 statements pertains to her husband's statement.   The court will

20 limit its analysis accordingly.   "[L]ay testimony as to a

21 claimant's symptoms or how an impairment affects ability to work

22 *is* competent evidence . . . and therefore *cannot* be disregarded

23 without comment."   <u>Stout</u>, 454 F.3d at 1053 (internal quotation

24 marks and citations omitted) (emphasis added by <u>Stout</u> Court).

25 "Consequently, [if] the ALJ wishes to discount the testimony of

26

27      [3]      Once again, the Commissioner is seeking to have this court engage in
improper *post hoc* rationalization, given that these were not reasons which the
28 ALJ proffered for discrediting the lay witnesses' statements.

1  lay witnesses, he must give reasons that are germane to each

2  witness." Id. (internal quotations and citations omitted).

3  Here, the ALJ did not do that with respect to the statement by

4  plaintiff's husband.  The only reason given for discrediting his

5  testimony was, as with the other lay witnesses, the fact that it

6  was retrospective.  Even a cursory reading of Mr. Martinez'

7  statement reveals that this is not an accurate reading of that

8  statement.  Therefore, this reason is not "germane."

9       Moreover, this error was not inconsequential because the

10 husband's statement goes to a critical issue here – the date of

11 the onset of disability.  See Lesmeister v. Barnhart, 439

12 F.Supp.2d 1023, 1028 (C.D. Ca. 2006) (internal quotation marks

13 and citations omitted) ("[T]he critical date is the date of onset

14 of disability, not the date of diagnosis.") On remand the ALJ

15 may, if justified, discount the statement by plaintiff's husband

16 for other reasons, including but not limited to those mentioned

17 by the Commissioner in his opposition.[4]   In accordance with the

18 applicable case law, the ALJ must, however, set forth those

19 reasons in his decision and those reasons must be "germane."

20       ***C. Field Office Report***

21       In finding the plaintiff not disabled, the ALJ relied upon a

22 June 7, 2004, Social Security Field Office Disability Report.

23 See Tr. at 21.   Plaintiff contends that this is "not even a

24 scintilla of evidence" for the ALJ's step two decision because

25 even though the ALJ stated that the claims representative

26 "observe that the [plaintiff] had no difficulty . . . using her

27 _____

28    [4]    For example, the Commissioner correctly observes that the husband's statement is undated.  See Def. Mem. (doc. 18) at 6 (citing Tr. at 134).

- 17 -

1 hands[,]" there is no evidence that she was asked to use her

2 hands.  Pl. Mem. (Doc. 10-3) at 11.  The Commissioner did not

3 respond to this argument.

4      On remand the ALJ may give this Report such weight, if any,

5 as is appropriate under the applicable law, and taking into

6 account the record as a whole as developed on remand.

7               ***D.   Adverse Credibility Finding***

8      Finally, plaintiff contends that there is not substantial

9 evidence to support the ALJ's finding that her allegations of

10 disability were not credible because the ALJ did not "acknowledge

11 or explain" the basis for his finding.  Id.  This is a valid

12 argument to which the Commissioner did not adequately respond.

13 See Light v. Social Security Admin., 119 F.3d 789, 792-93 (9th

14 Cir. 1997) (remanding to make "adequate findings[,]" because "the

15 ALJ failed to articulate an acceptable reason either for

16 disbelieving [plaintiff's] testimony in general or for

17 discrediting his pain testimony specifically[]").  On remand, the

18 ALJ shall assess plaintiff's credibility making the required

19 specific findings, including stating what testimony is not

20 credible and what facts in the record lead to that conclusion

21      To summarize, because the ALJ's finding of no disability is

22 not supported by substantial evidence, for the reasons set forth

23 above, plaintiff is entitled to summary judgment and this matter

24 is remanded.

25                         ***Conclusion***

26      In light of the foregoing,

27      IT IS ORDERED that plaintiff's motion for summary judgment

28 (doc. 10) is GRANTED;

1    IT IS FURTHER ORDERED that defendant's cross-motion for

2 summary judgment (doc. 18) is DENIED;

3    IT IS FURTHER ORDERED that this case is remanded to the

4 Commissioner for further administrative action pursuant to 42

5 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) (sentence four);

6    IT IS FURTHER ORDERED that upon remand the Social Security

7 Appeals Council shall remand this case to the ALJ to reevaluate

8 plaintiff's claim for disability insurance benefits in accordance

9 with this decision and the applicable Ninth Circuit case law.

10    IT IS FINALLY ORDERED directing the Clerk of the Court to

11 enter judgment in favor of plaintiff and to terminate this case.

12    DATED this 30th day of September, 2007.

13

14

15

16

17 Copies to all counsel of record

18

19

20

21

22

23

24

25

26

27

28

_____
Robert C. Broomfield
Senior United States District Judge

- 19 -